UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LORI HALL, : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 18-355WES |
| : | |
| CARLOS DEL TORO, SECRETARY, : | |
| U.S. DEPARTMENT OF THE NAVY, : | |
|     Defendant. : | |

**MEMORANDUM AND ORDER DENYING RENEWED MOTION FOR STAY AND RESETTING PRETRIAL ORDER DEADLINES**

This Memorandum and Order addresses Plaintiff's pending motion to stay (ECF No. 68), which she filed on May 31, 2022, and has been referred to me for determination.[1] Plaintiff's motion asks the Court to extend the current stay (which ended on July 6, 2022) indefinitely "until medical evaluation is provided that states otherwise," based on her ongoing mental health treatment at Newport Hospital. ECF Nos. 68 at 2; 67. To support her motion and in compliance with the Court's ruling that "Plaintiff bears the burden of showing that there is a pressing need for entry of an indefinite stay," ECF No. 67 at 2, Plaintiff represented that she was scheduled for

---

[1] Pursuant to the Court's Orders of May 3 and May 23, 2022, Plaintiff's first motion for an indefinite stay due to mental health (ECF No. 54) and her motion to reconsider the denial of an indefinite stay (ECF No. 65) were denied, but the Court granted Plaintiff's stay motions to the extent that they sought a temporary stay, ultimately to July 6, 2022. ECF Nos. 61, 67. Following the Order extending the stay, Plaintiff filed her renewed motion for an indefinite stay, which is the subject of this memorandum and order. ECF No. 68. One week before the current stay was set to lapse, on June 30, 2022, Plaintiff filed a notice of appeal. ECF No. 79. Since that appeal was launched, she has filed two more appeals. ECF Nos. 84, 87. In my report and recommendation, which issued on July 12, 2022, ECF No. 83, I found that the first of the three appeals was taken from unappealable interlocutory orders and is frivolous and interposed for the purpose of delay; this report and recommendation was adopted by the District Court on July 13, 2022. The two appeals that followed relate to the denial of Plaintiff's *in forma pauperis* ("IFP") application and also are not taken from appealable final orders; indeed, Fed. R. App. P. 24(a)(5) permits a party to file an IFP motion in the court of appeals after denial in the district court. Based on the foregoing, notwithstanding that three appeals are now pending, the Court can and should proceed to resolve the pending motion to stay. Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 96 (1st Cir. 2003) (district court can proceed, notwithstanding appeal, if appeal is based on unappealable order or if it otherwise constitutes transparently frivolous attempt to impede progress of case). Further, an appeal divests the Court of jurisdiction only over those aspects of the case involved in the appeal; the renewed motion for an indefinite stay has not yet been ruled on and therefore is not involved in the appeal. See ECF No. 83 at 2 n.3. Accordingly, the Court retains jurisdiction to address the pending motion. Colon-Torres v. Negron-Fernandez, 997 F.3d 63, 74 (1st Cir. 2021).

a June 7, 2022, evaluation with a psychiatrist and that she would "provide updates as to progress and disclosures." ECF No. 68 at 1, 2. Since that time, Plaintiff has filed almost five hundred pages of medical documents and related materials. ECF Nos. 69, 71, 72, 74-78. The Court has reviewed all of them. Because they do not support a continuation of the current stay, Plaintiff's motion for renewal of the medical stay is denied. In light of the foregoing, the Pretrial Order deadlines affected by the stay are hereby reset as follows: dispositive motions are due on August 31, 2022, and pretrial memoranda (due only if no dispositive motion is pending) are due on September 15, 2022.

I.  **BACKGROUND**

As of May 23, 2022, Plaintiff's medical documentation established the following:

> Plaintiff informed the Court that on May 3, 2022, she had a "meeting with [her] therapist" and that she would forward a copy of her "medical evaluation" to the Court as soon as she received it. ECF No. 60 at 1, 3. On May 6, 2022, Plaintiff filed a copy of a letter, dated May 5, 2022, from a licensed clinical social worker. ECF No. 62. Among other things, the letter notes Plaintiff's report of stress from this litigation, the therapist's uncertainty of diagnosis and concern for declining mental health status seemingly caused by an incident during her deposition, based on which the therapist recommended that Plaintiff present to "Newport Count[]y Community Mental Health Center for an emergency evaluation." Id. at 1. As of yet, the Court has not received any further documentation regarding such a mental health evaluation. On May 10, 2022, Plaintiff filed a copy of a "[p]rogess [n]ote[]" from a February 22, 2022, appointment (approximately one month and a half before the motion to stay was filed) with a nurse practitioner. ECF No. 64. The note reflects normal mental status observations, but that the nurse practitioner "[a]dvised Psychology today so she can get an appointment to see a psychologist and a prescribing provider." Id. at 4. The Court has not received any documentation reflecting follow up with a "psychologist" or "prescribing provider." Finally, Plaintiff attached to her motion for reconsideration a May 3, 2022, prescription for Trazadone, prescribed by the nurse practitioner, which is an antidepressant medication. ECF No. 65 at 5-10.

ECF No. 67 at 1 n.2. What follows is based on medical documents Plaintiff has filed since.

Establishing Plaintiff's baseline mental health status is a Consultative Examination Report dated January 30, 2018, written by a psychologist (Dr. Adam J. Cox) in connection with

2

Plaintiff's application for Social Security disability benefits. ECF No. 69. As a disability examiner, Dr. Cox is a denominated expert in analyzing an individual's ability to perform any work pursuant to the Social Security Act. See 20 C.F.R. § 404.1513a(b)(1) ("Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). Based on his examination, Dr. Cox found that Plaintiff has "extremely poor concentration and follow[]through" and "a high level of emotionality and stress and is particularly preoccupied with having lost a job where she felt she was harassed over the course of years." ECF No. 69 at 1. Dr. Cox's report reflects Plaintiff's admission that she had stopped working in August 2017 because she was "terminated for noncompliance with work rules," as well as that her "current episode of treatment began in 2015." Id. at 1, 2. Regarding activities of daily living and social functioning, Dr. Cox found Plaintiff able to manage her household, including the care of an elderly father and to have reasonably good (though limited) social interactions with family, but a "history of conflict with various treatment providers and attorneys." Id. at 2, 3. While he observed "no notable problems with gross comprehension or retention" and low average intelligence, Dr. Cox noted that Plaintiff's attention and memory are "highly scattered" with "severe problems with attention and task persistence that affect virtually every aspect[] of her life." Id. For mental health diagnoses, Dr. Cox assessed ADHD, acute stress disorder, persistent depressive disorder, and cannabis use disorder, mild. Id. at 4.

On mental status examination ("MSE"),[2] Dr. Cox found Plaintiff able to engage in logical communication with "no evidence of panic, psychosis or suicidality," "able to advocate for

---

[2] A mental status examination or MSE is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022 (internal quotation marks omitted), adopted by text order (D.R.I. March 31, 2022); Lilibeth G. v. Kijakazi, C.A. No. 20-474WES, 2021 WL 5049377, at *1 n.4 (D.R.I. Nov. 1, 2021), adopted, 2021 WL 5631745 (D.R.I. Dec. 1, 2021).

3

herself in basic ways . . . [with] sufficient mental acumen to make longer-term decisions," and with normal stream of thought and orientation to person, place and time. Id. at 3. He also found that she presented with "severe ADHD and stress," as well as that she was preoccupied with "what she describes as a long history of harassment at her last workplace." Id. Ultimately, Dr. Cox found moderate impairments in the ability to understand, remember and apply information, moderate to marked impairment in the ability to interact with others and extreme impairment with respect to concentration, persistence and pace; based on these findings, he opined that she could not work. Id. at 4. As to prognosis, Dr. Cox opined that, "[h]er mental status seems unlikely to change in the foreseeable future," even with the assistance of medication. Id. at 4.

Other evidence Plaintiff has presented establishes that she was found to be fully disabled and awarded Social Security benefits, although nothing in the record reveals when the award was made or what was determined to be the date of onset of disability. See ECF No. 66 at 3-4.

As pertinent to the present, Plaintiff's submissions prior to the renewed motion to stay reference her exacerbation of symptoms apparently due to trauma caused by an incident during her deposition held on February 17, 2022, that she understands to have been a heart attack resulting in the death of the stenographer. ECF No. 47 at 1. For example, this is outlined in a May 5, 2022, note by a treating social worker[3] who diagnosed acute stress disorder, but also noted "uncertainty of diagnosis and concern for [Plaintiff's] declining mental health status (insomnia, question of hallucinations and decreased orientation to time)." ECF No. 62 at 1. The social worker referred Plaintiff for an emergency evaluation. Id.

Plaintiff has provided a handwritten summary of her resulting recent treatment at Newport Hospital. ECF Nos. 71 at 1-2; 72 at 1-4. This was not inpatient treatment, but rather

---

[3] Plaintiff informed the social worker that the "stenographer collapsed and subsequently died" during her deposition. ECF No. 62 at 1.

4

was treatment in a partial hospitalization program, which consisted of up to three therapy appointments a day from intake on May 19, 2022, until June 2, 2022, when she was discharged. ECF Nos. 71 & 72; see ECF No. 71 at 42-49 (discharge summary). Plaintiff filed a page from an assessment, which notes that she is a "disabled . . . woman" with a "complex personal history," whose sleep improved with recent prescription for Trazadone; the unknown writer records observations of tangential and circumstantial thought process and speech, and a history of opioid dependence, with methadone treatment having been terminated in May 2020. ECF No. 72 at 5. A Newport Hospital record dated May 19, 2022, lists pertinent diagnoses as ADHD, anxiety disorder and severe single current episode of major depressive disorder with psychotic features; a May 20, 2022, record adds the diagnoses of "Adjustment disorder with mixed anxiety" and "[d]epressed mood (still evaluating)." ECF No. 72 at 6, 14. Later during treatment, the diagnoses of "Personality disorder, evaluating" and "Cognitive change" were added. E.g., ECF No. 72 at 63.

Therapy notes[4] reflect that, during the partial hospitalization, Plaintiff consistently displayed appropriate affect and active and cooperative participation. E.g., ECF No. 72 at 10, 12, 24. An MSE conducted on May 20, 2022, resulted in normal observations, including generally normal orientation, except for sometimes mildly disorganized thoughts, tangential and circumstantial associations, thought content focused on recent stressful experiences, with impaired judgment, insight and attention/concentration. ECF No. 72 at 30. During one session on May 23, 2022,[5] Plaintiff reported that she had been followed by a black SUV and someone broke into her apartment; her MSE at that session included angry mood and mildly impaired

---

[4] The notes reflect that these sessions were via Zoom. E.g., ECF No. 72 at 19-20, 24.

[5] This session occurred shortly after a wellness visit to Plaintiff by law enforcement triggered by her filing a potentially threatening statement related to a judicial officer of this Court.

5

memory.  ECF No. 72 at 44-45.  An MSE on May 27, 2022, reflects improvement: "ok" mood, "[l]ess disorganized" thoughts, tangential/circumstantial associations, "[b]ut improved today," impaired judgment, insight, attention/concentration and memory (mild).  ECF No. 71 at 4.  Plaintiff's discharge plan called for referral to a psychiatrist and supportive and acceptance-and-commitment therapy.  ECF No. 72 at 33-34.  Discharge was on June 2, 2022.  ECF No. 71 at 42-49.

In her more recent handwritten submissions, Plaintiff advises that a neuropsychological evaluation may be conducted in the future: "I have appointment w Kathy Benevidies [a nurse practitioner] in 4 months so she get the neuropsychiatrist evaluation."  ECF No. 74 at 1; see ECF No. 77 at 1 (referencing evaluation by neuropsychologist).

During the recent course of this litigation, based on the Court's observations of Plaintiff during these proceedings and references in various of Plaintiff's filings (including her medical records), the Court finds that Plaintiff has been living independently and managing her own affairs.  E.g., ECF No. 81 at 1-8.  (Plaintiff sets out detailed description of her household expenses); ECF No. 53 at 1-2 (Plaintiff sets out detailed description of her household expenses and avers that she supports two sons).  The Court further observes that her court filings have been consistent with Dr. Cox's finding that she is "able to advocate for herself in basic ways . . . [with] sufficient mental acumen to make longer-term decisions," and with orientation to person, place and time.  ECF No. 69 at 3.  For example, she has demonstrated that she was able to understand the Court's requirements for how to make filings.  Similarly, while the content of her filings is often tangential and disorganized, it nevertheless remains generally focused on the matter in hand; for example, in connection with the pending stay motion, she has appropriately filed relevant medical documents.

## II. APPLICABLE LAW

The Court "enjoys inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 99 (1st Cir. 2008) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)) (federal courts have inherent power to stay litigation). This includes "'broad discretion to stay proceedings as an incident to its power to control its own docket.'" Katz v. Liberty Power Corp., LLC, Civil Action No. 18-cv-10506-ADB, 2020 WL 3440886, at *3 (D. Mass. June 23, 2020) (quoting Clinton v. Jones, 520 U.S. 681, 706-07 (1997)). However, a stay is an intrusion into the ordinary process of administration and judicial review and is not a matter of right. Id. "[S]tays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration." Marquis v. F.D.I.C., 965 F.2d 1148, 1155 (1st Cir. 1992) (emphasis added). Plaintiff bears the burden of showing that there is a pressing need for entry of an indefinite stay. Nken v. Holder, 556 U.S. 418, 433-34 (2009); Landis, 299 U.S. at 255; In re Lernout & Hauspie Sec. Litig., Civil Action Nos. 00-11589-PBS, 02-10302-PBS, 02-10303-PBS, 02-10304-PBS, 2003 WL 23341390, at *2 (D. Mass. June 12, 2003). Without such a showing, entry of an indefinite stay would be an abuse of discretion. See Landis, 299 U.S. at 255; In re Lernout & Hauspie Sec. Litig., 2003 WL 23341390, at *2. The Court must also consider the serious prejudice to the defendant of an open-ended stay, including the fading memories of witnesses and the costs of sustaining its ability to defend the case. See generally Galindo v. Am. Paramedical Servs., Inc., No. 04-01108-CV-W-FJG, 2008 WL 2620885, at *2 (W.D. Mo. June 30, 2008). Thus, a temporary stay should not be continued at the request of a mentally ill plaintiff who is not likely to improve. At least one court has held that, if there is not a likelihood of sufficient recovery during a time-limited stay, the action should be dismissed. Id.

at *1-2 (employment discrimination claim under Title VII dismissed without prejudice because plaintiff had requested continuing incompetence-based stays protracting case over two years due to her inpatient mental health hospitalization with no prospect of change).

Consistent with these principles, if a litigant is found to be mentally "incompetent," the Federal Rules of Civil Procedure do not authorize an indefinite stay. Rather, when an unrepresented litigant is found to be "incompetent," Fed. R. Civ. P. 17(c)(2) provides that a "court must appoint a guardian ad litem – or issue another appropriate order – to protect . . . [an] incompetent person who is unrepresented in an action"; the Rule stipulates that the individual's competency to sue or be sued is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1); see Graham v. Teller Cty., 632 F. App'x 461, 465 (10th Cir. 2015). Because Plaintiff is a domiciliary of Rhode Island, ECF No. 1 ¶ 5, the Court must look to Rhode Island's definition of what is incompetency sufficient to support the appointment of a guardian ad litem to determine whether Fed. R. Civ. P. 17(c) is applicable.

Rhode Island law defines incompetency in an array of civil contexts. For starters, because the guardian displaces the ward's ability to make her own decisions, Rhode Island law sets the bar high for appointment of a guardian ad litem for an adult; Rhode Island courts are cautioned to proceed with care:

> The court shall not appoint a guardian or limited guardian if the court finds that the needs of the proposed ward are being met or can be met by a less restrictive alternative or alternatives. The court shall authorize the guardian to make decisions for the individual in only those areas where the court finds, based on one or more decision making assessment tools, that the individual lacks the capacity to make decisions.

R.I. Gen. Laws § 33-15-4(a)(1); see R.I. Gen. Laws § 33-15-47 (form used for guardianship petition focuses on whether individual lacks decision-making ability). Consistent with this principle, the Rhode Island Supreme Court limns the civil capacity to make a contract as follows:

> Mere mental weakness, or inferiority of intellect, will not incapacitate a person from making a valid contract; nor is it easy to define the state of mind which will have this effect. There must be such a condition of insanity or idiocy as, from its character or intensity, disables him from understanding the nature and effect of his acts, and therefore disqualifies him from transacting business and managing his property.

Sosik v. Conlon, 91 R.I. 439, 442, 164 A.2d 696, 698 (1960) (internal quotation marks omitted). Similarly, Rhode Island courts have considered the term "unsound mind" or incompetence in relation to tolling the statute of limitations and held that it means conditions of incompetency or inability to manage everyday affairs. Smith v. O'Connell, 997 F. Supp. 226 (D.R.I. 1998), aff'd sub nom, Kelly v. Marcantonio, 187 F.3d 192, 198 (1st Cir. 1999) (Rhode Island Supreme Court defines "unsound mind" as a "condition that renders an individual legally incompetent or incapable of managing his or her everyday affairs"); Miller v. R.I. Hosp., 625 A.2d 778, 785 (R.I. 1993) (describing "unsound mind" as a form of legal incompetency characterized by "[t]he inability to 'govern' one's self and manage one's other affairs").

While no cases were found applying Rhode Island law of incompetency in the context of Fed. R. Civ. P. 17(c), decisions from other jurisdictions are instructive. These make clear that the Rule is appropriately invoked only in the most severe of circumstances. For example, in Hammond v. Bledsoe, No. 3:CV-12-0242, 2012 WL 3779355 (M.D. Pa. Aug. 30, 2012), the *pro se* plaintiff asserted that he was incompetent and suffered from schizophrenia and personality disorder, yet he failed to present verifiable evidence of these assertions; the court held that the Fed. R. Civ. P. 17 duty was not triggered by these facts. Id. at *3; see, e.g., Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir. 1986) (Rule 17 contemplates incompetence that affects a person's ability to manage his/her own affairs); James v. Hamaker, Civil Action No. 15-cv-02425-GPG, 2016 WL 97767, at *3 (D. Colo. Jan 8, 2016) (plaintiff asserted mental illness but medical records submitted did not reflect mental incompetence; Rule 17 duty not triggered). Nor is the

9

District Court required to inquire *sua sponte* into a *pro se* plaintiff's mental competence based on a litigant's bizarre behavior alone; rather, the Rule's duty of inquiry arises only if the Court is presented with verifiable evidence of incompetence. Powell v. Symons, 680 F.3d 301, 307 (3d Cir. 2012); see Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 203 (2d Cir. 2003) (holding that there is no necessary relationship between mental incompetence warranting appointment of legal representative and mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation; Rule 17(c) does not "require a court to attempt to distinguish between the truly incompetent and those who – because of a personality disorder or other cause – behave in a foolish or bizarre way, hold irrational beliefs, or are simply inept").

### III. ANALYSIS

It is clear from Dr. Cox's Report that Plaintiff suffers from longstanding (since at least 2015) and very serious – rendering her unable to perform any work – impairments of attention and concentration, exacerbated by emotionality and stress due to her preoccupation with the loss of her job. Dr. Cox's 2018 evaluation further establishes that Plaintiff's impairment is not remediable with medication and that her mental status is unlikely to change despite treatment. The more recent records corroborate Dr. Cox's findings in that Plaintiff was consistently observed during treatment at Newport Hospital to have tangential and circumstantial thought associations with impaired attention/concentration.

Plaintiff's recent mental decline, seemingly caused by events that occurred during her February 17, 2022, deposition in this case, was addressed through the relatively conservative intervention of a two-week partial hospitalization, with discharge over a month ago. Consistent with Dr. Cox's finding that Plaintiff's basic mental impairment is unlikely to improve with

treatment, the Newport Hospital treating record does not reflect material improvement. Rather, Plaintiff's treating providers at Newport Hospital concluded that Plaintiff did not require further partial hospitalization and that treatment should continue on an outpatient basis, which it has since Plaintiff was discharged on June 2, 2022.

Nothing in the medical records Plaintiff has submitted in support of the stay suggests that a continuation of it would lead to remediation of Plaintiff's baseline mental impairment; rather, the evidence establishes that further delay for further mental health treatment is not going to change anything. See Galindo, 2008 WL 2620885, at *1-2 (temporary stay should be lifted when no prospect that further delay will lead to remediation of mental impairment). At the same time, the record is also clear that Plaintiff has consistently retained the ability to manage her everyday affairs and is far from "incompetent" as defined in Rhode Island law. See, e.g., ECF No. 69 at 2-3 (Dr. Cox opines that Plaintiff is able to manage household and retains ability "to advocate for herself in basic ways . . . [with] sufficient mental acumen to make longer-term decisions"); ECF No. 71 at 42-49 (Plaintiff discharged on June 2, 2022, to outpatient treatment). Therefore, a Fed. R. Civ. P. 17(c) guardian ad litem appointment would be inappropriate. Finally, the prejudice to Defendant of continuing the stay is significant. As Defendant argued in its opposition to the motion to stay, this case relates to Plaintiff's termination of employment on August 1, 2017, almost five years ago, and the case has been protracted and delayed by Plaintiff's numerous motions to enlarge time, many motions to stay the case, and (recently) by her filing of an interlocutory appeal that was dismissed for lack of jurisdiction.[6] See ECF No. 57 ¶¶ 8, 11. The Court also observes that Plaintiff's many filings in connection with her quest for a stay have raised a question whether Plaintiff can prevail on the merits of the limited claims in

---

[6] Three new appeals are now pending.

11

issue in this case,[7] yet the summary judgment deadline has been repeatedly extended by Plaintiff-initiated delays.

In sum, I find that Plaintiff's filings reveal that she has a longstanding and serious mental health condition unlikely to be remediated by medical treatment that apparently has made it impossible for her to work but that does not render her incompetent or incapacitated from prosecuting this case as defined in the law of Plaintiff's domicile (Rhode Island). Therefore, continuing the temporary stay that was imposed to give Plaintiff time to address an acute flare of symptoms is not appropriate, particularly in light of the serious prejudice caused by ongoing delay to Defendant.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff's motion for renewal and indefinite continuation of the stay until a "medical evaluation is provided that states otherwise" (ECF No. 68 at 2) is denied. The temporary stay ended on July 6, 2022, and this litigation shall proceed. The Pretrial Order deadlines affected by the temporary stay are hereby reset as follows: dispositive motions are due

---

[7] The only claims in issue in this case are that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., when it terminated Plaintiff's employment on August 1, 2017, (1) because she is female; and (2) in retaliation for having engaged in the protected activity of filing two informal complaints and one formal complaint of discrimination against her direct supervisor. ECF No. 1 ¶¶ 13, 24-25, 32, 35-36. Yet on January 30, 2018, Plaintiff admitted to Dr. Cox in connection with her Social Security disability application that "she was terminated for noncompliance with work rules." ECF No. 69 at 1. Further, the finding that she was fully disabled and unable to perform any work potentially as early as some time in 2017, would raise the question whether Plaintiff can establish a *prima facie* case of discrimination under Title VII. If (and the record does not reveal whether this is accurate) she was adjudicated to be fully disabled with onset prior to the date of termination, it is not clear how she can show that she was "qualified for, and adequately performed, her job" as of that date. Pagano v. Frank, 983 F.2d 343, 348 n.7 (1st Cir. 1993) (internal quotation marks omitted); see, e.g., Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44-47 (2d Cir. 2015) (application for and award of Social Security disability benefits on grounds of full disability with onset prior to termination supports summary judgment in favor of employer on Title VII claim of termination based on race and retaliation); Brewer v. Petroleum Suppliers, Inc., 946 F. Supp. 926, 931 & 931 n.5 (N.D. Ala. 1996) (determination that plaintiff was disabled prior to discharge prevents her from receiving back pay for retaliatory discharge under Title VII; discriminatory actions taken after plaintiff became fully disabled are barred). However, until presented with a motion for summary judgment, the Court cannot assess these issues.

on August 31, 2022, and pretrial memoranda (due only if no dispositive motion is pending) are due on September 15, 2022.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 14, 2022