UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LORI HALL,                                  :
          Plaintiff,                        :
                                            :
          v.                                :          C.A. No. 18-355-WES-PAS
                                            :
CARLOS DEL TORO, SECRETARY,                 :
U.S. DEPARTMENT OF NAVY                      :
          Defendant.                        :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In her complaint filed on June 27, 2018, with the assistance of an attorney,[1] *pro se* Plaintiff Lori Hall alleges that she was removed from her job at the Naval Sea Logistics Center ("NSLC") due to gender discrimination and retaliation for her pursuit of prior Equal Employment Opportunity ("EEO") complaints in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). ECF No. 1 ("Compl.") ¶¶ 1, 2, 32-36.

Now pending before the Court is the motion of Defendant Carlos Del Toro, Secretary, U.S. Department of Navy ("Defendant" or "Navy"), for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 119. Defendant contends that the undisputed evidence establishes that Plaintiff was removed from her position following counseling and opportunities to improve because she was repeatedly disrespectful to her supervisors and failed to follow instructions. Id. at 1. Defendant asks the Court to enter judgment in its favor based both on the absence of evidence to support Plaintiff's allegations of gender discrimination and retaliation, as well as on Plaintiff's admissions that she engaged in the conduct that was the basis for her removal. Id. at 14-23. In compliance

---

[1] Plaintiff was represented by an attorney until July 16, 2021. Text Order of July 16, 2021. For the period since, when she has been *pro se*, Plaintiff's filings have been treated by the Court with the leniency required for any *pro se* litigant. De Barros v. From You Flowers, LLC, 566 F. Supp. 3d 149, 152 (D.R.I. 2021).

with DRI LR Cv 56(a), Defendant accompanied the motion for summary judgment with a Statement of Undisputed Facts ("SUF") that references the evidence on which it relies. ECF No. 120. The motion has been referred to me for report and recommendation.

Plaintiff's deadline to file her opposition to the motion for summary judgment was originally December 5, 2022. By Text Order of December 2, 2022, the Court granted Plaintiff's motion to extend and reset the deadline to January 30, 2023. In the Text Order, the Court reminded Plaintiff of her obligation to comply with Fed. R. Civ. P. 56, DRI LR Cv 56 and the Order Regarding Contact with Court Staff (ECF No. 48); the Court cautioned Plaintiff to file her opposition as a single filing or group of filings made at substantially the same time to avoid confusion. Text Order of Dec. 2, 2022.

On January 25, 2023, Plaintiff's opposition was docketed; it consists of one paragraph, which states, "as my complete response content is ALL OF MY SUBMISSIONS previous submitted in motions, attached to motions, and all other avenues District court used to obtain." ECF No. 127 at 1. As to the substance of her opposition, Plaintiff asserts in full:

> I was assaulted I was this sole female with 31 years perfections of personnel jacket. None of my submissions were of personal interpretation, in all of defense justification has never been confirmed by first hand knowledge. Smith and I should've been separated in accordance with department of navy sexual discrimination laws to omit preconceive altercations, but instead encouraged, no fist hand knowledge or witnesses obtained in NSLC testimony. NSLC removed and replaced management to state no knowledge. I oppose judgment unless in my favor. Then if not in my favor then I request pre-trial rights be involked.

Id.

The Court assumes that Plaintiff's "SUBMISSIONS" consist not just of the matters she has presented for filing on the docket, but also the hundreds of emails she has sent to the Clerk's Office Intake email box since she became *pro se* containing cloud-based links to PDF documents or attached PDF documents. To manage the "extraordinary burden" that this deluge of material

imposed on the Clerk's Office, as well as to permit the Court to ascertain which items Plaintiff intended to be treated as filings, the Court entered the Order Regarding Contact with Court Staff on February 22, 2022.  ECF No. 48.  On September 12, 2022, Plaintiff indicated that she wished to submit material to the Court to be preserved for trial; since then, as a unique (and burdensome to the Clerk's Office) accommodation to Plaintiff in light of her *pro se* status, the Clerk's Office has stored such material electronically.  As of this writing, this collection has swelled to 2.45 GB of material, a total of 2,806 PDF pages.

As a practical matter, it is impossible for the Court to troll through this vast cache of unauthenticated material to guess what might be pertinent to the pending motion for summary judgment or what might give rise to a dispute as to the facts listed in Defendant's SUF.  See Sandle v. Wal-Mart Stores, Inc., No. 16 cv 4157, 2018 WL 1138544, at *5 (N.D. Ill. Mar. 2, 2018) (court not required "to fish a gold coin from a bucket of mud" to assist plaintiff in avoiding dismissal) (internal quotation marks omitted).  Thus, while the Court has leniently interpreted Plaintiff's opposition as quoted above, to the extent that they are not controverted, the Court proceeds on the premise that the facts listed in Defendant's SUF are deemed admitted due to the absence of opposition.  See DRI LR Cv 56(a)(3); Love v. Dept. of the Army, Civil Action No. 22-10432-NMG-JGD, 2023 WL 2406390, at *1 n.1 (D. Mass. Mar. 8, 2023) (*pro se* litigants are not excused from complying with the Federal Rules of Civil Procedure or local rules).  Nevertheless, I am mindful that, even for an unopposed motion for summary judgment, the "failure of the nonmoving party to respond to a summary judgment motion does not in itself justify summary judgment." Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1517 (1st Cir. 1991).  That is, my recommendation rests on the principle that the court "must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of

law." Id. (internal quotation marks omitted).

I.    **Background**[2]

For thirty-one years,[3] Plaintiff, who is female, was employed by the Navy; she worked at what ultimately became NSLC in Newport, Rhode Island, as a Property Disposal Specialist. She was removed from service on August 1, 2017. SUF ¶¶ 1-2.[4]

A.    NSLC Transition and Plaintiff's First and Second EEO Complaints

Plaintiff's job duties and those of her co-worker[5] were materially affected by a process that occurred between 2014 and 2016, as the NSLC absorbed several logistics warehouse operations that were formerly part of the Naval Supply Systems Command ("NAVSUP") and the Defense

---

[2] The complicated travel of Plaintiff's various EEO complaints is described in Hall v. Del Toro, C.A. No. 18-CV-355-WES-PAS, 2022 WL 266707, at *1-4 (D.R.I. Jan. 28, 2022), appeal dismissed, No. 22-1520 (1st Cir. Sept. 7, 2022). This description of the travel was amplified by Defendant's Notice (ECF No. 37) filed on the same day as the issuance of that decision; it advises that an EEO Final Order had issued on January 20, 2022, as to the "Pending EEOC Complaint" as the term is defined in Hall. 2022 WL 266707, at *1. The reader's familiarity with that travel is assumed.

[3] Plaintiff's opposition asserts that she served in her job for "31 years perfections of personnel jacket." ECF No. 127 at 1. Defendant asserts that Plaintiff was employed for "almost thirty years." SUF ¶ 1. Plaintiff's version of this fact is assumed to be true for purposes of the motion for summary judgment.

[4] To support these two foundational facts and two others pertaining to the undisputed timing of two EEO actions (SUF ¶¶ 93, 97), Defendant relies on the EEO Final Agency Decision, DON No. 17-65726-47769, which is the adverse-to-Plaintiff administrative decision on the merits of the claim that she was removed from her job on the bases of gender (female) and reprisal, the matters in issue in this case. SUF ¶¶ 1-2, Ex. A (for complete copy, see ECF No. 132) ("EEO FAD"). In light of Plaintiff's pro se status, the Court has scoured the EEO FAD for any references that might be supportive of Plaintiff's claims. Otherwise, the Court has considered the findings in the EEO FAD only as confirmatory of the Court's independent review of the evidence, affording them limited weight. Woodbury v. Victory Van Lines, Civil Action No. TDC-16-2532, 2018 WL 5830764, at *3 (D. Md. Nov. 7, 2018) (EEOC findings do not override court's independent review of evidence presented in connection with motion for summary judgment); Escobar v. Off. of Disabled Persons Investigating Off., 797 F. Supp. 70, 74 (D.P.R. 1992) (at summary judgment, EEOC's findings of fact have some evidentiary weight but are not binding on court); see Chandler v. Roudebush, 425 U.S. 840, 863 n.39 (1976) ("[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo").

[5] Accepting as true Plaintiff's assertion in her opposition to the motion for summary judgment, the Court assumes that Plaintiff was the "sole female" in her workgroup. ECF No. 127 at 1. This is consistent with Defendant's evidence in that, at various points in the record, there are references to Plaintiff's co-worker in the disposal area; the co-worker is consistently described as male. See, e.g., ECF No. 120-11 at 20 (email of instruction to Plaintiff and male co-worker); ECF No. 120-17 at 4 (supervisor's statement regarding reaction of other disposal worker to workplace changes describes him as male); EEO FAD at 5-8 (referencing Plaintiff's male co-worker); see also ECF No. 120-11 at 15 (email of instruction to Plaintiff and two male co-workers).

Logistics Agency ("DLA").  SUF ¶¶ 6-8.  As a result of this reorganization, Plaintiff, along with other employees, was transitioned from NAVSUP to NSLC.  The date of Plaintiff's formal transition was February 8, 2016.  SUF ¶¶ 7-8.  This transition and the accompanying changes in workplace procedures created different processes and changed certain job functions.  Stewart Dec. (ECF No. 120-18) ¶ 8.  As relevant here, Plaintiff's job responsibility – property disposal – changed, including that property disposal ceased to be a significant part of the job for those employees working in the warehouse.  SUF ¶¶ 9-10.

Prior to and following the NSLC transition, Plaintiff and her male co-worker were supervised by Loreen Reynolds, a female.  SUF ¶ 13 & Ex. E (ECF No. 120-17 at 1, 3).  Several employees, including Plaintiff and her male co-worker, resisted the transition changes, saying that they were being asked to do work that was not part of their normal job duties; Plaintiff in particular resisted any work in the warehouse but property disposal, which was not a skill that was needed under the new NSLC procedures.  SUF, Stewart Dec. (ECF No. 120-18) ¶¶ 10-11 & Ex. E (ECF No. 120-17 at 3).  During the transition to NSLC, in January 2016, Plaintiff filed and soon after withdrew her first (as reflected in this record) EEO complaint alleging gender-based harassment by Sean Smith, an NSLC employee working on the transition.  SUF ¶¶ 89-90 & Ex E (ECF No. 120-17 at 2).  At the time of these events, Mr. Smith was not Plaintiff's direct or indirect supervisor.  Id. ¶ 3.

These tensions are described in the March 2016 statements of Plaintiff's supervisor, Ms. Reynolds, who was interviewed regarding Plaintiff's 2016 allegations of harassment/hostile work environment:

> We didn't officially transfer to NSLC until 7 February 2016 and as a result of NSLC beginning to change process prior to transition as a possible conflict . . . . The employees did not receive these changes well . . . .  The employees felt that these were new duties and not part of what they currently do and [sic] Disposal

> Specialists . . . .  [Plaintiff's male co-worker], he's the voice of calm but he
> doesn't want to do this new process either.  He gave [Plaintiff] the idea about the
> job not being in their PD.

SUF, Ex. E (ECF No. 120-17 at 2-4).  Ms. Reynolds said that she was aware of Plaintiff's January

2016 EEO complaint of harassment/hostile work environment directed towards Mr. Smith, who

was not supervising Plaintiff and her male co-worker yet but had given "the Disposal folks"

directions for processing material that Plaintiff and her male co-worker considered "not part of their

normal duties."  Id. at 2, 4 & SUF ¶ 89.  To respond to Plaintiff's complaint, Ms. Reynolds

repeatedly explained to Plaintiff the "change process."  Id. at 2-3.  She also "sat down with" Mr.

Smith to discuss his tendency to "direct process change to the team without working through [her

as] the supervisor."  Id. at 4.  Ms. Reynolds opined that Plaintiff had made the January 2016 EEO

complaints against Mr. Smith, "to drive her issues."  Id. at 3.  During a meeting with Plaintiff to

"discuss her issues and a way forward," Ms. Reynolds reported that Plaintiff "kept cutting . . . off"

the Navy officer trying to explain and "stormed out of his office"; Reynolds stated that Plaintiff

admitted that she "didn't follow directions," and that Plaintiff "doesn't like to be checked up on."

Id. at 3.  Ms. Reynolds expressed her own observation that:

> [Plaintiff] is a very challenging employee.  At times she verges on the border of
> insubordination.  For instance in regard[] to this issue she was provided direction
> on this process change though emails, verbal guidance and direction from the
> FLCN Division Officer and the immediate supervisor.  She has accused me of
> saying things different from one day to the other.  She has asked me to put
> everything I ask her in writing.  So I told her I do not have to do direction in
> writing, especially on a day to day basis.

Id. at 4.

Ms. Reynolds' statements do not contain any facts permitting the inference of gender bias

or gender-based discrimination by Mr. Smith during this period.  To the contrary, Mr. Smith's

offending behavior (providing direction to "Disposal" employees whom he did not yet supervise)

was found to be disagreeable by both Plaintiff and her male co-worker.  Further, despite Plaintiff

withdrawing the January 2016 EEO complaint, NSLC did not ignore Plaintiff's concerns but

conducted an internal management inquiry, which was closed with the finding "that there was no

evidence to substantiate [Plaintiff's] claims of sexual discrimination or harassment at NSLC

Newport."  SUF ¶¶ 89-90 & Silverman Dec. (ECF No. 120-16 ¶¶ 4, 10).

On August 29, 2016, this time acting through legal counsel, Plaintiff filed her second EEO

complaint alleging harassment and discrimination based on age, gender, physical disability and

reprisal for filing her first EEO matter; it appears to be based on similar issues to those raised in her

first EEO complaint.  SUF ¶ 91; ECF No. 37-1.  As described in the EEO Final Order regarding

this complaint that issued on January 20, 2022, ECF No. 37-1 at 2, the second EEO complaint

alleges that NSLC failed to advise Plaintiff of the outcome of the first EEO complaint, that Mr.

Smith continued to interact with her instead of dealing through the chain of command, that she was

asked to perform duties outside of her position with unclear directives and that her supervisor

criticized her work and conduct.  ECF No. 37-1 at 2-4.  This formal EEO complaint remained

pending throughout the balance of Plaintiff's employment at NSLC.  It was scheduled for a hearing

but was dismissed on August 18, 2018, in reliance on the request of Plaintiff's attorney.  Hall, 2022

WL 266707, at *2; ECF No. 37-1 at 4.  The order of dismissal "inadvertently" was not issued until

November 12, 2021, id. at *4; on January 20, 2022, the order of dismissal was "implemented as the

Department of the Navy's final action in this matter."  ECF No. 37-1 at 5.  As far as the record

reveals, no appeal – either administratively or to this Court – has been taken.  See SUF ¶ 92.

The first and second EEO complaints are referred to collectively as the "prior EEO

complaints."

      B.      <u>NSLC Post-Transition and Plaintiff's Progressive Discipline</u>

After the NSLC transition was completed, Plaintiff's supervision was shifted.  In October 2016, Mr. Smith became Plaintiff's first-line supervisor, SUF ¶ 3; meanwhile, Steven Pichini became Plaintiff's second-level supervisor on June 27, 2016, and continued through April 4, 2017, SUF ¶ 4, while Steven Kirby was Plaintiff's second-level supervisor from mid-April 2017 until her removal on August 1, 2017.  SUF ¶¶ 1, 5.  Mr. Smith was aware of Plaintiff's January 2016 EEO complaint against him and her "prior EEO activity."  SUF, Ex. B (ECF 120-3 at 3, 6).  Mr. Pichini was aware of her "prior EEO activity," as was Mr. Kirby, "in general."  SUF, Ex. C (ECF No. 120-4 at 2); SUF, Ex. D (ECF No. 120-5 at 2).

On October 17, 2016, Mr. Pichini conducted a meeting with Plaintiff, a manager outside Plaintiff's chain of command, her union representative, and a female employee in human resources to discuss her behavior, to provide guidance to enable Plaintiff to perform her work in a respectful manner and to give Plaintiff a "Letter of Expectations" ("LOE"); at some point, Mr. Smith joined the meeting.  SUF ¶¶ 16-19 & Exs. F (ECF No. 120-6), G (ECF No. 120-7).  The LOE addressed, *inter alia*, the importance of avoiding outbursts of anger and offensive and derogatory remarks and maintaining professionalism in the workplace, attendance and the fulfillment of assigned duties; the LOE states that it is a "direction" and that any future complaint of improper on-the-job behavior would be considered to be a "serious matter."  Ex. G (ECF No. 120-7 at 2-3).  During this meeting, Plaintiff "constantly interrupted" Mr. Pichini, raised her voice, argued with her union representative, ripped up the original LOE and left the meeting.  SUF ¶ 26; Ex. F (ECF No. 120-6).  There is no suggestion in the record that the LOE was linked in any way to Plaintiff's gender, to any discriminatory animus or to the prior EEO complaints.

On November 29, 2016, NSLC initiated the imposition of formal discipline on Plaintiff for Conduct Unbecoming a Federal Employee.  SUF ¶ 27.  This process was not concluded until

February 8, 2017, when Mr. Pichini issued the Suspension Decision, sustaining the charges, finding that Plaintiff's "behavior needs to be corrected," and imposing a reduced (down from the five days originally proposed) suspension of two days.  SUF ¶¶ 44-46 & Exs. H (ECF No. 120-8), K (ECF No. 120-10).  This discipline was discussed at meetings attended by Plaintiff and her union representative, both of whom provided input on which NSLC relied.  See SUF ¶¶ 29, 36-43 & Ex. K (ECF No. 120-10).  The union representative's written response specifically acknowledges:

> [Plaintiff] does not dispute [conduct] . . . .  [Plaintiff] did confront Mr. Smith in a manner that she now regrets . . . .  [Plaintiff] is an emotional person and she reacted to the workplace incidents in an emotional manner [due to provocation by] co-workers going through papers on her desk and [false] reports about her work output . . . .  [Plaintiff] now understands that, while her concerns may be valid, they are not a license to be disruptive in the workplace or to be disrespectful to her supervisor.

Ex. J (ECF No. 120-9 at 2-3).  There is no suggestion in any of the documents or facts related to this formal discipline that Plaintiff had been subject to gender-based harassment or discrimination, or that this discipline was imposed because of or related to the prior EEO complaints.

> C.    Process Culminating in Plaintiff's Removal From Service

Between March 1 and May 31, 2017, Plaintiff wrote emails that are in the record to Mr. Smith, with some copied to her union representative and her attorney.  SUF, Ex. L (ECF No. 120-11 at 10-24).  In one email dated March 1, 2017, addressed to Mr. Smith and the union representative, copied to her attorney, Plaintiff complained that she wanted to be allowed to make up time without being required to take leave as her supervisor directed was required by applicable policy.  Ex. L (ECF No. 120-11 at 12).  In this email, Plaintiff peremptorily demanded, "Sean, can you please answer the questions.  Why wont you allow me to make up leave at the end of the day."  Id.  She also stated:

> I KNOW FIRST HAND HOW YOU HAVE ALLOWED EMPLOYEES TO REMAIN LATE TO AVOID LEAVE in past and present.

9

> AM I AN EXCEPTION BECAUSE I AM A WOMAN OR IS IT BECAUSE
> YOU want to continue to treat me different because I am a female? . . . Since you
> don't make anyone elses job difficult . . . just mine . . . its because I am a women.

Id.  Apart from the EEO FAD,[6] this email is the only document of record reflecting Plaintiff's

claim of gender-based animus by Mr. Smith or any other NSLC employee.[7]  Despite having

received this email, Plaintiff's union representative (who made submissions on Plaintiff's behalf,

see Ex. M (ECF No. 120-12)) never attributed any of the matters of which Plaintiff complained or

any of the adverse actions taken against Plaintiff by NSLC to her gender.  In particular, neither his

submissions nor any of the extensive materials submitted by Plaintiff (nor anything else in this

record) contain anything permitting the inference that NSLC's policy on employee absences was

implemented differently for male and female employees.

    In other emails of record written during this period, Plaintiff is overtly insubordinate using

derogatory language, for example, to aggressively accuse Mr. Smith of lying.  E.g., Ex. L (ECF No.

120-11 at 10) ("take responsibility for your actions Sean stop lying about me.  Stop lying about me

Sean . . . I would be embarrassed if I got caught lying.  You Sean it's just another day.  You're not

responsible for your actions.").  By way of illustration, in her May 2, 2017, response to a

professionally worded email from Mr. Smith to Plaintiff and two male co-workers appropriately

reminding all three of correct procedures, Plaintiff acerbically asserted her opinion that Mr. Smith's

---

[6] The EEO FAD indicates that Plaintiff "identified S1 and S2 as the management officials who allegedly subjected her to discrimination based on her sex," but provides no facts to support the allegation, other than her offering of "C1" to support her claim that a male employee was treated more favorably when he was permitted to make up time in order to leave work early.  Id. at 3, 7.  The administrative decision maker found that C1's circumstances were materially different from those affecting Plaintiff and that C1 was not similarly situated to her.  Id. at 7.  The decision further finds that "no other employee had conduct similar to that of [Plaintiff] as it relates to the charges outlined in her proposed Notice of Removal."  Id.  I do not find that this reference to C1 permits the inference that Plaintiff's removal was the result of disparate treatment or discriminatory animus.

[7] This single instance of an allegation of gender animus reappears in the record in that it is quoted in the Notice of Proposed Removal, Ex. L (ECF No. 120-11 at 2).

directive was incorrect, and she would not follow it:

> You know that is not why we inspect the delivery . . . as you blame fault on me every time something is wrong . . . Stop changing your story . . . I will no longer QA the material. I am not going to get into the weeds with you changing your story. You have screamed in my face because something has come in wrong. So in the future I am not making any decision.

Id. at 15. In another example of failing to follow instructions, Mr. Smith directed Plaintiff and her male co-worker to complete required trainings by a specific deadline; after some delay, Plaintiff's male co-worker had largely complied, but Plaintiff had not. Id. at 20-23, 26-31; see EEO FAD at 6.

Based on this and similar well documented concerns, on June 15, 2017, Mr. Smith issued a Notice of Proposed Removal ("Proposed Removal") alleging disrespectful conduct and failing to follow instructions in specified instances, with emails illustrating the conduct attached. SUF ¶ 47 & Ex. L (ECF N0. 120-11). Echoing the concerns raised in 2016 by Ms. Reynolds when she was supervising Plaintiff, Mr. Smith wrote:

> Any direction I give is challenged in a combative tone. Discussions of time and leave policies or routine work matters are met with argument and insolence and can no longer be tolerated . . . . I cannot trust you to carry out your duties independently.

SUF, Ex. L (ECF No. 120-11 at 7). The written response to the proposed removal from Plaintiff's union representative concedes that she engaged in the charged misconduct but requests a penalty less severe than removal: "[a]lthough it is clear that Ms. Hall has acted in a disrespectful manner to her supervisor, the underlying offenses are relatively minor; illegal parking, absence from the workplace for short periods of time, and incorrect assignment of customer disposal items." SUF ¶ 58 (emphasis added); see id. ¶¶ 56-57. Plaintiff's written response also admitted to much of the underlying conduct but asserted that she had justifiable reasons for her behavior. SUF ¶ 59. In her sworn declaration during the subsequent EEO investigation, Plaintiff repeated her admission that she had committed the conduct for which she was removed: "Yes, but I had reason for my actions

11

and my comments." SUF ¶ 79.  In her deposition, Plaintiff testified consistently, twice saying that she admitted the conduct (but that she has reasons for the conduct) and once testifying that she did not commit the conduct, but explaining that she does not "understand what conduct is."  SUF ¶¶ 80-81 & Ex. O (ECF No. 120-15 at 5-10).  There is nothing in any of these materials leading up to Plaintiff's removal permitting the inference that male employees who engaged in similar conduct – insubordination and directing rude and derogatory communications to supervisors – received more lenient discipline.  See EEO FAD at 8 ("[Plaintiff] provided no substantive evidence in support of her allegations.").

The final decision to terminate Plaintiff was made by Mr. Kirby on July 26, 2017, effective August 1, 2017 ("Removal Decision").  SUF ¶ 62 & Ex. N (ECF No. 120-13).  As described in his written decision, Mr. Kirby considered the specifications in Mr. Smith's proposal for removal, as well as the submissions from Plaintiff and her union representative, and found the specifications to be well founded: "I see no evidence that your supervisor's proposal is based on anything other than the specifications at issue, which you confirm took place and indicate are justified."  SUF ¶ 84 (quoting Ex. N (ECF No. 120 -13 at 5)); SUF ¶ 83.  Mr. Kirby specifically noted that he had "considered [Plaintiff's] allegation of discrimination and hostile work environment."  Ex. N (ECF No. 120-13 at 4).  In that regard, Mr. Kirby observed, "[y]ou have not provided any evidence of findings of a hostile work environment or any discrimination based on your protected bases, instead relying on your subjective feelings."  Id.  He added that Plaintiff's emails from her supervisor "consist of ordinary workplace instruction."  Id. at 5.

Defendant's SUFs assert that Mr. Kirby's decision to remove Plaintiff was the culmination of a progression of discipline beginning before Mr. Smith became her supervisor (when her supervisor was female) and was based on admitted misconduct that persisted despite counseling

and progressive discipline; it was not based on Plaintiff's gender or any discriminatory animus.

SUF ¶¶ 83-88 & Ex. N.  Further, following her termination, Plaintiff's claim that her removal was

based on her gender and in retaliation for the prior EEO complaints was presented to an EEO

administrative law judge, who considered evidence from an array of sources, including at least six

individuals, and found that there was no evidence leading to a reasonable inference that the Navy's

removal decision was motivated by Plaintiff's gender or prior EEO activity.  SUF ¶ 97; see EEO

FAD at 8 ("[W]e find that management articulated a legitimate, nondiscriminatory reason for its

action, and that the preponderance of the evidence does not support [Plaintiff's] claims of unlawful

discrimination. . . .  Accordingly, we find that the Department of the Navy did not discriminate

against [Plaintiff] based on sex and reprisal as alleged.").  The instant lawsuit was timely filed after

the Navy issued EEO FAD on May 23, 2018.  Compl. ¶¶ 7-10.[8]

After Plaintiff's removal on August 1, 2017, she was not replaced; her specific position was

never filled.  SUF ¶ 15.

## II.    Standard of Review

Summary judgment is proper where the movant shows its entitlement to judgment as a

matter of law through the materials in the record.  Fed. R. Civ. P. 56(a).  Summary judgment shall

be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Id.; Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986).  As the Supreme Court has emphasized, "[b]y its very terms, this standard provides

that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)

---

[8] The complaint's allegation (¶ 8) that the EEO FAD was issued on May 23, 2017, is assumed to be a typographical error.

(emphasis in original); see Scott v. Harris, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version").

The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an absence of evidence to support the non-moving party's case." Rakes v. United States, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (internal quotation marks omitted), aff'd, 442 F.3d 7 (1st Cir. 2006). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings but must come forward with specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256. A plaintiff's *pro se* status does not insulate her from summary judgment. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

## III.    Applicable Title VII Law

Plaintiff alleges that her removal was based on gender discrimination and retaliation for the prior EEO complaints in violation of Title VII. Compl. ¶ 2. Title VII prohibits discrimination based on gender and retaliation for opposing an unlawful employment practice. See e.g., Turner v. Northeastern Univ. Public Safety Police, C.A. No. 13-11183-JLT, 2013 WL 6009263, at *2 (D. Mass. Nov. 7, 2013). Where, as here, there is no direct evidence of discrimination, Title VII claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as further delineated in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

Pursuant to the McDonnell Douglas framework, for a claim of gender discrimination to survive summary judgment, a plaintiff must prove a *prima facie* case by demonstrating that: "(1)

14

she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person." Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 94 (1st Cir. 2018) (internal quotation marks omitted). The fourth prong has been phrased by the First Circuit as "requir[ing] a plaintiff to demonstrate that '[the] employer sought a replacement for [the plaintiff] with roughly equivalent qualifications.'" Cosme-Montalvo v. Trafon Grp., Inc. Civil No. 11-2197 (MEL), 2013 WL 1798009, at *4 (D.P.R. Apr. 29, 2013) (quoting Villanustre v. Hard Rock Café P.R., Inc., 556 F. Supp. 2d 79, 84 (D.P.R. 2008) (quoting Smith v. Stratus Computer, 40 F.3d 11, 15 (1st Cir. 1994)). At the *prima facie* stage, Plaintiff is not required to demonstrate she was treated differently than similarly situated employees who were not in the protected class. Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (time to consider comparative evidence in disparate treatment case is at third step of burden shifting ritual). For a *prima facie* case of retaliation, a plaintiff must plausibly allege that: "(1) she engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct." Theidon v. Harvard Univ., 948 F.3d 477, 505 (1st Cir. 2020) (internal quotation marks omitted). Establishing a *prima facie* case is a "small showing" that is "not onerous" and "easily made." Kosereis, 331 F.3d at 213 (internal quotation marks omitted).

If the plaintiff succeeds in making the "small showing" of demonstrating a *prima facie* case, the burden of production shifts to the defendant to show a legitimate nondiscriminatory reason for the adverse employment action. Bonilla-Ramirez, 904 F.3d at 94. At this stage, the defendant need only articulate – not prove – a legitimate nondiscriminatory reason for its action; that is, the defendant's burden is one of production, not persuasion. Burdine, 450 U.S. at 255-56; Theidon, 948 F.3d at 495; see Fields v. Clark Univ., 966 F.2d 49, 51 (1st Cir. 1992). Inappropriate,

unprofessional, and disruptive behavior is a legitimate non-discriminatory reason for removal, Kelly v. Boeing Co., Civil Action No. 1:16-cv-196, 2016 WL 7217661 at *4 (E.D. Va. Dec. 12, 2016), as is the "failure to follow supervisory instructions." Arnoldi v. Bd. of Trustees, National Gallery of Art, 557 F. Supp. 3d 105, 115 (D.D.C. 2021), aff'd, No. 21-5182, 2022 WL 625721 (D.C. Cir. 2022).

If the defendant succeeds at the second step, the third phase of the McDonnell Douglas framework requires the plaintiff to present evidence sufficient for a fact finder to conclude by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination" or retaliation. Burdine, 450 U.S. at 253; Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 459 (1st Cir. 2016); Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 221-23 (1st Cir. 2007). In showing pretext, a plaintiff must present enough to demonstrate not only that the employer's proffered reason was false, but also that the alleged unlawful discrimination or retaliation was the real reason for the action. St. Mary's, 509 U.S. at 507-08; Lang, 813 F.3d at 459. The employer will still be entitled to judgment as a matter of law if "no rational fact finder could conclude that the action was discriminatory" or retaliatory. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). At this phase of the analysis, the claimant's subjective opinion is not enough to avoid summary judgment. Mariani-Colón, 511 F.3d at 222; Rosenthal v. Faygo Beverages, Inc., 701 F. App'x 472, 480 (6th Cir. 2017) ("a plaintiff's subjective interpretations or feelings are insufficient to establish pretext"); Greenman v. Metro. Prop. & Cas. Ins. Co., C.A. No. 15-04ML, 2017 WL 9324760, at *9 (D.R.I. Mar. 22, 2017), adopted, 2017 WL 2438776 (D.R.I. June 6, 2017), appeal dismissed, No. 17-1656, 2018 WL 11438566 (1st Cir. Mar. 29, 2018).

The ultimate burden of showing that the employer intentionally acted unlawfully always

remains with the plaintiff.  Burdine, 450 U.S. at 253.

**IV.     Analysis**

>   A.     Gender Discrimination

Plaintiff's Count I claim of discriminatory removal based on gender fails at the fourth prong

of the *prima facie* phase because the undisputed record establishes that Plaintiff's duties did not

continue to be performed by a comparably qualified individual in that she was not replaced by

anyone.  Nevertheless, assuming that Plaintiff can clear the *prima facie* bar, I find that Defendant

has amply sustained its burden of asserting a legitimate nondiscriminatory reason for the adverse

employment action (removal) that the Navy took against her through its presentation of sworn

statements and authenticated documents, buttressed by Plaintiff's admissions.  These establish that

her termination was based on insubordination, the failure to follow instructions and her pattern of

unprofessional, derogatory and rude statements and behavior directed towards supervisors and

others.  See Kelly, 2016 WL 7217661 at *4; Arnoldi, 557 F. Supp. 3d at 115.  This evidence shows

that Mr. Kirby's decision to remove Plaintiff was supported by a legitimate nondiscriminatory

reason.  SUF ¶¶ 63-77.

That leaves the question whether Plaintiff can sustain her burden of showing trial-worthy

evidence sufficient to permit the inference that this legitimate nondiscriminatory reason for her

firing was a pretext or coverup for discriminatory action based on gender.  Burdine, 450 U.S. at

255-56; see Ronda-Perez v. Banco Bilbao Vizcaya Argentaria–P.R., 404 F.3d 42, 45 (1st Cir. 2005)

("pretext means deceit used to cover one's tracks") (internal quotation marks omitted).  To avoid

summary judgment, Plaintiff must proffer specific facts that would enable a reasonable factfinder to

conclude that the stated reason for the removal was a "sham" intended to cover up the Navy's true

motive of gender discrimination.  Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)

(internal quotation marks omitted).

Despite the Court's lenient reading of her opposition to the summary judgment motion, Plaintiff's presentation falls woefully short of this threshold.  The only concrete evidence arguably permitting the inference of gender discrimination are the facts that Plaintiff was the "sole female" in the workgroup and that she was terminated.  ECF No. 127 at 1.  As a matter of law, however, such facts are certainly pertinent to establish the first and third prongs of a *prima facie* case but are insufficient to avoid summary judgment at the final phase of the McDonnell Douglas sequential analysis.  Cole v. Mountain View Mktg., Inc., 744 F. Supp. 2d 1240, 1250 (S.D. Ala. 2010) (termination of only female in workgroup insufficient to support inference that discriminatory motive was real reason for gender discrimination); aff'd, 429 F. App'x 897 (11th Cir. 2011) (per curiam); Geoffrey v. Adelphia Commc'ns Corp., No. 04CV570A, 2006 WL 1843325, at *5-8 (W.D.N.Y. May 30, 2006) (summary judgment enters despite evidence that sole female employee was terminated because she did not "produce[] evidence of gender bias"), adopted, 2006 WL 1932136 (W.D.N.Y. July 4, 2006); see Hallquist v. Local 276, Plumbers and Pipefitters, AFL CIO, 843 F.2d 18, 24-25 (1st Cir. 1988) (evidence sufficient to support a finding of discrimination where employer terminated sole female plumber, was not pleased that union sent a female plumber, manipulated vacation time to retain male employees, and hired two male employees soon after terminating female plumber).  Otherwise, there is only Plaintiff's unsupported and conclusory allegations in the complaint that Mr. Smith recommended termination because he did not want to work with a female and that his stated reasons were false or misleading, as well as that her termination was gender-based in that employees who committed similar infractions would not have been terminated.  Compl. ¶¶ 13-23.  However, the complaint essentially concedes the absence of evidence in that this pivotal allegation – that "she was removed from her position because she is

female" – is alleged on "Plaintiff's information and belief."  Compl. ¶ 25.  Also in the record is Plaintiff's unbuttressed assertion in her March 1, 2017, email that Mr. Smith was applying the leave policy differently to her because she was female; however, this accusation is not supported by a scintilla of proof.  The only suggestion of such proof – the individual ("C1") who Plaintiff offered during the EEO FAD hearing – does not support the proposition because he was not similarly situated.  EEO FAD at 7.

At bottom, Plaintiff has identified no male employee who engaged in the same conduct as she without similar repercussions; to the contrary, the record reflects that both she and her male co-worker were upset about the NSLC transition, but that he was "the voice of calm," even though "he doesn't want to do this new process either."  SUF, Ex. E (ECF No. 120-17 at 4).  Plaintiff has failed to identify any statements, documents, or other evidence indicating any gender-based actions or even any gender-related comments by anyone involved in her removal at any point.  In short, the record is utterly devoid of evidence that supports Plaintiff's contention that the stated reason for her removal was a pretext or that Defendant removed her due to her gender.  See Carvalho v. Santander Bank, N.A., 573 F. Supp. 3d 632, 640-41 (D.R.I. 2021) (granting summary judgment where female employee fails to present evidence that termination was different treatment from others "similarly situated in all relevant aspects") (internal quotation marks omitted).  Therefore, I find that Plaintiff's claim of gender discrimination fails as a matter of law and recommend that the Court enter judgment against her on Count I.

      B.    Retaliation for Prior EEO Activity

In Count II, Ms. Hall alleges that she was removed from her position as a retaliatory response by Mr. Smith to the prior EEO complaints.  Compl. ¶¶ 35-37.  Count II fails at the *prima facie* phase because there is no evidence to meet the third element – that Mr. Smith's "desire to

retaliate was the but-for cause of the challenged employment action."   Univ. of Tex. Sw. Med. Ctr.

v. Nassar, 570 U.S. 338, 352 (2013).   For starters, there is no evidence that Mr. Smith desired to

retaliate or that his role in Plaintiff's progressive discipline was linked in any way to the prior EEO

complaints.   SUF, Ex. N (ECF No. 120-13).   Further, Mr. Smith did not make the final decision to

remove Plaintiff; he wrote the proposal but the decision to remove was made by Mr. Kirby who is

not the target of any aspect of Plaintiff's prior EEO complaints.   Indeed, when asked why she

thought either Mr. Smith or Mr. Kirby were motivated by her prior EEO complaints, Plaintiff

provided no answer as to Mr. Smith and affirmatively averred that "Kirby has no active role."   Ex.

O (ECF No. 120-14 at 7).   Nor is there any evidence to suggest that other Navy employees (other

than Mr. Smith) were motivated to retaliate for the prior EEO complaints.   Indeed, what evidence

there is suggests the opposite; for example, when Plaintiff told Ms. Reynolds that she did not "want

this EEO Discrimination complaint to go that far," Ms. Reynolds urged her "to think about it . . .

[and] [s]ee if this incident is really happening."   SUF, Ex. E (ECF No. 120-17 at 4).

          If a *prima facie* case is nevertheless assumed, Defendant's presentation of "legitimate, non-

discriminatory" reasons for Plaintiff's removal – the admitted pattern of well-documented

unprofessional behavior and failure to follow instructions that persisted despite progressive

discipline – means that the burden now rests with Plaintiff, requiring her to present evidence from

which a fact finder could conclude that Defendant's proffered reasons were mere pretext to cover

up retaliation.   See Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012).   This pretext inquiry

focuses on whether Mr. Kirby believed that the Navy's stated reason for Plaintiff's removal was

credible.   See Meléndez v. Autogermana, Inc., 622 F.3d 46, 53 (1st Cir. 2010).   As noted *supra*,

pretext "means more than an unusual act; it means something worse than a business error; pretext

means deceit used to cover one's tracks."   Ronda-Perez, 404 F.3d at 45 (internal quotation marks

omitted); see Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 67 (1st Cir. 2008) ("focus is on the mindset of the actual decisionmaker").  For Plaintiff to "impugn the veracity" of the Navy's proffered reason, she must proffer specific facts that would enable a reasonable factfinder to conclude that the reason for the termination was a "sham" intended to cover up the Navy's true motive – to retaliate against her for the prior EEO complaints.  Mesnick, 950 F.2d at 824; see Greenman, 2017 WL 9324760, at *13 (claimant must have more than speculation to sustain burden of showing that "lay-off was a pretext for retaliation against her").

Here, there is simply no evidence to support the complaint's conclusory allegation of pretext – that "[t]he reasons given by Mr. Smith for wanting Plaintiff removed were either false or of such insignificant nature that no other employee would have been removed had they not engaged in protected activity like Plaintiff had."  Compl. ¶ 30.  To the contrary, the Smith proposal for removal was supported by objective specifications and Mr. Kirby's final decision was based not just on these specifications, but also on input from Plaintiff and her union representative, both of whom admitted that Plaintiff had engaged in the charged conduct.  There is not a scrap of evidence permitting the inference that Mr. Kirby's decision to remove Plaintiff was a sham or pretext to cover up retaliation for Plaintiff's prior EEO complaints.

Because Plaintiff has neither sustained her burden of presenting a *prima facie* case, nor presented evidence permitting the inference of pretext indicating that the decision to remove was motivated by discriminatory animus relating to her EEO activity, I recommend that the Court enter judgment against her on her Count II claim of retaliation.

## V.    Conclusion

Based on the foregoing, I recommend that Defendant's motion for summary judgment (ECF No. 119) be granted.  Any objection to this report and recommendation must be specific and must

be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 21, 2023